UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARILYN GEORGE | CIVIL ACTION |
| VERSUS | NO. 13-5388 |
| DIVERSIFIED FOODS AND SEASONINGS, INC. | SECTION "F" (3) |

**ORDER**

On January 15, 2014, the Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) [Doc. #4] came on for oral hearing before the undersigned. Present were Thomas Hogan on behalf of plaintiff and Mark Carver on behalf of defendant. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition and the case law, the Court rules as follows.

**I.     Background**

Because neither party provided the Court with a background section, the Court turns to the allegations of the complaint. Defendant Diversified Foods and Seasonings, Inc. ("DFS") hired plaintiff Marilyn George in August 26, 2006 at $10.50/hour to work at its Madisonville, Louisiana plant. DFS promoted her on September 25, 2006, and she received a raise to $12.17/hour. DFS then terminated her as part of a reduction in force in March 2008 but later re-hired her that same month at a pay rate of $10.58/hour. Two months later, DFS again terminated her as part of a reduction in

force but again re-hired her three months later at a pay rate of $9.25/hour.  On January 30, 2012, DFS promoted George to Prep Lead at a pay rate of $12.00/hour.

After George's promotion, DFS promoted Jerome Walker to Production Manager, thus becoming a member of management.  There was gossip in the workplace that Walker was involved romantically with an hourly employee, Velma Buckler.  Walker believed George to be the source of the gossip.  David Gallo, the night shift supervisor, informed George that Walker had told Gallo that George had reported him to management.

During and after Hurricane Isaac, the Madisonville plant operated on a limited basis.  Buckler was allowed to work, but George was not.  On September 13, 2012, DFS informed George that she had failed to carry out assigned tasks.  With regard to said tasks, George informed management that she could not perform them because there were no containers available to receive the blended ingredients, and the machine dicer was broken.  George documented the incident and placed a copy of her report in the day-shift binder and also delivered a copy to the office of Babby Doley, another supervisor.

The next day, George reported to work.  After four to five hours of work, Walker summoned her to his office.  Another supervisor was also present.  Walker then terminated her, informing George that he was not at liberty to inform her why DFS was terminating her.  The separation notice indicated that the reason for the termination was her inability to perform.  Said notice also informed George that she was not eligible for re-hire.

George filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 1, 2013.  The EEOC issued George a right-to-sue letter.  She then sued DFS in this Court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

*et seq.*

## II. Law and Analysis

### A. Legal Standard

Federal courts are courts of limited jurisdiction and possess power over only those cases authorized by the United States Constitution and federal statutes. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). If a district court lacks jurisdiction over the subject matter of a plaintiff's claims, dismissal is required. *See* Fed. R. Civ. P. 12(b)(1). The lack of subject matter jurisdiction may be raised at any time during the pendency of the case by any party or by the court. *See Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction sua sponte.").

In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). *See Williams v. Wynne*, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008) (observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

Rule 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. Such a motion "'is viewed with disfavor and is rarely granted.'" *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted).

The United States Supreme Court suggests a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678. First, the Court must identify pleadings that are conclusory and thus not entitled to the assumption of truth. *Id.* A corollary: legal conclusions "must be supported by factual allegations." *Id.* Second, for those pleadings that are

4

more than merely conclusory, the Court assumes the veracity of those well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement to relief." *Id.*

Claims that are merely conceivable will not survive a motion to dismiss; claims must be plausible. *Twombley*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). In the end, evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B.     Application of Law to Fact

#### 1.     George's Discrimination and Disparate Impact Claims

Under Rule 12(b)(1), DFS first moves to dismiss these claims on the ground that George failed to exhaust her administrative remedies. It is well-established law that courts may not entertain claims brought under Title VII for which an aggrieved party has not first exhausted her administrative remedies by filing a charge of discrimination with the EEOC. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). The filing of an EEOC charge "is a precondition to filing suit in district court." *Id.* at 379. "The filing of an EEOC charge triggers an investigation and a process pursuant to which voluntary compliance may be obtained and discriminatory practices and policies eliminated. Requiring the plaintiff first to state her allegations of employment discrimination in an EEOC charge serves 'Congress' intention to promote conciliation rather than litigation in the Title VII context.'" *Polk v. U.S. Airways, Inc.*, Civ. A. No.

H-08-1663, 2009 WL 455261, *2 (S.D. Tex. Feb. 20, 2009) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

Civil complaints filed under Title VII may only encompass "discrimination like or related to allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the EEOC." *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994). Thus, the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit. *Id.*

"A discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." *Turner v. St. Luke's Episcopal Health Sys.*, Civ. A. No. H-06-1668, 2008 WL 706709, *8 (S.D. Tex. Mar.14, 2008). In order for a particular "alleged discriminatory act to fall within the scope of an EEOC charge, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." *Id.*

Here, George's Charge of Discrimination read:

I was hired by the above-named employer on August 28, 2006. On September 14, 2012, I was discharged as a Prep Lead earning $12.00 per. Management learned about my supervisor's romantic involvement with another employee. My supervisor believed that I was the source of the complaint to management. The company employs more than 15 employees.
    No reason was given for my discharge. However, my supervisor was recently promoted to lead Production Manager and made the comment to other employees that he would be making some changes. I understood him to mean that he would be looking for a way to discharge me.
    I believe I have been discriminated against because of my race, Black, sex and in retaliation for having being associated with disciplinary action against a manager in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Ex. A, att'd to Def.'s Mem. Supp. Mot. Dismiss).

      DFS contends that the charge does not include any conduct to demonstrate that DFS terminated George because of her race or gender or that DFS treated persons outside the protected class more favorably than George. DFS argues that the charge merely alleges that George was terminated in retaliation for her supervisor's alleged belief that she was the source of the complaint against him to management about his romantic involvement with a co-employee. DFS recognizes that George checked the boxes for "race" and "sex" on the charge but maintains that checking off said boxes is insufficient.

      George now stipulates that the charge does not reflect a claim for race and/or gender discrimination and only supports a claim for retaliation. The Court thus finds that DFS's arguments have merit. A Title VII complaint is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Thomas v. Tex. Dep't Of Criminal Justice, Institutional Div.*, 220 F.3d 389, 395 (5th Cir. 2000); *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). In other words, any issues that George did not bring before the EEOC for consideration and were not investigated by the EEOC during its investigation can not be considered by a district court. This Court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). The only absolutely essential elements of a timely charge of discrimination are the allegations of fact contained therein. *Sanchez*, 431 F.2d at 463. The crucial element in a charge of discrimination is the set of facts alleged, not the charging party's

conclusion concerning the employer's motivation. *Id.* at 464 n.6.

Given George's stipulation, the case law cited above and the Court's review of the Charge of Discrimination, the Court finds that there are no facts alleged in the charge to support a claim for race and/or gender discrimination. Accordingly, the Court finds that George has failed to exhaust her administrative remedies as to these claims. They are dismissed.

### 2. George's Retaliation Claim

DFS also moves to dismiss George's retaliation claim because George never engaged in protected activity. DFS maintains that George never reported Walker's and Buckler's relationship to management and her subjective belief that such conduct constituted sexual harassment is insufficient. It also contends that even had she reported the relationship, Title VII does not protect an employee who reports a relationship between co-employees.

To establish a prima facie case of unlawful retaliation under Title VII, George must show (1) that she engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a casual link existed between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)).

George contends that the complaint alleges a viable cause of action for retaliation "for having been perceived as opposing a practice made unlawful by Title VII-sex harassment in the form of *quid pro quo*." [Doc. #13 at p. 3]. George maintains that she must only establish that she had a good faith and reasonable belief that the conduct was unlawful. She argues that DFS's policy prohibited sexual harassment in the workplace and further that DFS would not retaliate against her for reporting any sexual harassment. She also notes that the complaint also alleges preferential treatment to

Buckler in the form of overtime that was not offered to her.[1]

The Court finds that there is no allegation in George's complaint that she either engaged in protected activity or that she suffered an adverse employment action because of any such protected activity. The complaint only alleges that Walker terminated her because he believed that she was the source of gossip about his relationship with a co-employee. An employee does not have automatic standing to sue for retaliation because a co-worker engaged in protected activity. *See, e.g., Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226-27 (5th Cir. 1996) (holding, under the Age Discrimination in Employment Act, that husband had no claim for retaliation when he failed to prove that he participated in his wife's activities or that he opposed the defendant's alleged discriminatory practice). Indeed, the Court finds that there is no allegation in the complaint that any individual – including Buckler – engaged in protected activity.

George relies on *Thompson v. North American Stainless, LP*, – U.S. –, 131 S. Ct. 863 (2011), as support for her argument that Walker and DFS fired her in retaliation for opposing a practice made unlawful by Title VII. But *Thompson* is inapposite. While the Court recognizes that *Thompson* changed the law with regard to third-party reprisals, the Court finds that *Thompson* is limited to employees who alleged that their employer retaliated against them based on the protected activity of another closely-related employee. *Id.* at 868-69. There is no allegation that George and Buckler are in any way related or even friends. And, as the Court noted, there is no allegation that

---

[1] This last argument more properly supports George's claim for disparate treatment, which she now stipulates is not present in her charge. In any event, the Fifth Circuit has long held that "'when an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender.'" *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 (5th Cir. 2003) (quoting *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 656 n.6 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)).

even Buckler engaged in protected activity. Accordingly, George can not establish the first element of her *prima facie* claim for retaliation.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) [Doc. #4] is GRANTED.

New Orleans, Louisiana, this 31st day of January, 2014.

**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**